**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF**

```
 ------------------------------------------------------------------- X
VIRTUS NUTRITION, LLC.                            :
                                                  :
          Plaintiff,                              :
                                                  :
          v.                                      :          No. 21-cv-00165
                                                  :
THE UNITED STATES,                                :
                                                  :
          Defendant.                              :
 ------------------------------------------------------------------- X
```

## MOTION OF PLAINTIFF, VIRTUS NUTRITION LLC.,  IN RESPONSE TO COURT ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED

### INTRODUCTION

Pursuant to this Court's Order dated August 30, 2022, ECF 75, plaintiff Virtus Nutrition hereby shows cause why this action should not be dismissed for lack of prosecution pursuant to Court of International Trade 41(b)(3). For the reasons set forth below, plaintiff does not oppose dismissal of this action, but respectfully moves, pursuant to U.S.C.I.T. Rules 7 and 41(a)(2) that this Court dismiss the case with the stipulation that defendant United States, through its agency United States Customs and Border Protection ("CBP"), allow exportation of the merchandise pursuant to the written agreement between plaintiff and CBP dated February 25, 2021. As discussed herein, this Court has the power to enforce said agreement as a term of its judgment of dismissal.

### STATEMENT OF FACTS

This action challenges CBP's denial of a protest which Virtus Nutrition filed, challenging the exclusion of certain imported Malaysian palm fatty acid distillates ("PFAD") and palm stearin, under claimed authority of Section 307 of the Tariff Act of 1930, 19 U.S.C. § 1307. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

On February 8, 2021, the vessel M/S ARGENT GERBERA, containing a cargo of PFADs and palm stearin from Malaysia, arrived within the boundaries of the Port of San Francisco, California, with intent to unlade its cargo. By Notice of Detention issued to plaintiff and dated February 8, 2021, CBP detained the cargo while it was still on board the vessel for investigation of possible importation of merchandise made with forced labor, in violation of Section 307 of the Tariff Act of 1930, as amended 19 U.S.C. § 1307. Customs' Notice of Detention referenced a Withhold Release Order ("WRO") issued December 30, 2020,[1] in respect of palm oil and products containing palm oil from Malaysia, produced by Sime Darby Plantation Bhd. Plaintiff's imported merchandise was not made by Sime Darby, but rather by Wilmar Sdn. Bhd., a Malaysian producer. CBP requested that plaintiff prove that the merchandise was not made with Sime Darby materials (either crude palm oil or palm fruit) of Malaysian origin.

On February 10, 2021, plaintiff made entry of the imported merchandise undercover of San Francisco Consumption Entry 808-2001373-0.

On February 25, 2021, plaintiff and CBP entered into a "Temporary Storage Agreement" designed to address custody of the merchandise while administrative and potential judicial proceedings regarding the merchandise were conducted. A copy of this Agreement is appended as Exhibit A to the Affirmation of Matt Swanson, submitted herewith. Under the terms of the Agreement, the goods were to be stored in shore tanks and railcars at the Penny Newman Grain Terminal facility in Stockton, California, at Virtus' expense.[2] Virtus was responsible for securing the merchandise and ensuring CBP inspectors had access to it. Virtus agreed not to remove or

---

[1] Plaintiff had contracted for this merchandise, which was purchased from Mitsui, Ltd., who in turn purchased it from Wilmar, the manufacturer, before the WRO on Sime Darby merchandise was issued.

[2] Ordinarily, detained merchandise would be stored at a CBP-owned or –contracted facility, at CBP's expense.

distribute the merchandise, and to submit a Single Entry Bond to Customs in an amount equal to the value of the detained merchandise.

In consideration of the promises undertaken in the Temporary Storage Agreement, CBP issued a permit to unlade the detained merchandise. This relieved Virtus of the burden and expense of additional days of vessel demurrage, and spared it damages which might have been incurred had the merchandise not been unlade from the M/T ARGENT GERBERA.

To date, both parties have performed their obligations under the Temporary Storage Agreement. Paragraph 9 of the Agreement guarantees Virtus the right to export the merchandise in the event it is not released as a result of the Withhold Release Order:

> 9. If the shipments are excluded as a result of the Withhold Release Order, Virtus Nutrition LLC is responsible for re-export or destruction and will be liable for all associated costs, subject to Virtus' right to file administrative protests.

Paragraph 10 of the Agreement anticipates exportation by rail to Canada or Mexico in the event the goods are not admitted.

Once the Temporary Storage Agreement was signed, Customs requested, and received from plaintiff, extensive information concerning the manufacture of the merchandise in the subject entry, including records concerning the growth and harvesting of palm fruit bunches, the extraction of oils from that fruit, and the refining of the oils into the products contained in the subject entry. In addition, plaintiff submitted an extensive Ultimate Consignee Statement, pursuant to 19 C.F.R. § 12.43, confirming the lack of Sime Darby Plantation Bhd. content, or any other forced labor content, in its goods.

On March 18, 2021, the Port Director of Customs at the Port of Oakland/San Francisco, California issued to plaintiff a notice indicating that the subject cargo was being excluded from entry into the United States pursuant to 19 U.S.C. § 1307. The notice provided no reasons for the

3

action taken, only stating that the information submitted by plaintiff was not sufficient to persuade Customs to revoke or modify the Withhold Release Order on palm oil and products containing same produced by Sime Darby Plantation Bhd.[3] The notice did indicate that the goods, if not exported within 60 days, could be subject to seizure and forfeiture and disposal by CBP

On March 31, 2021, plaintiff protested the exclusion of the subject merchandise. On April 7, 2021, Customs transmitted notice of denial of the protest. Plaintiff then filed this action to contest the denial of its protest.

Customs' Notice of Exclusion had indicated that if the goods were not exported within a particular time, they were subject to seizure and forfeiture. As the Court will recall, counsel for the parties cited the Temporary Storage Agreement and the Customs regulations as reasons why a Preliminary Injunction to block seizure was not required in this case.

The parties worked diligently to try this action on an expedited basis, exchanging discovery materials and setting an ambitious litigation schedule. It was plaintiff's intention to demonstrate, by a preponderance of the evidence before this Court, that it was more likely than not that plaintiff's imported merchandise contained no Sime Darby content, and was not subject to the WRO. That expectation was thwarted, however, when Wilmar, the producer, which had cooperated in providing information during the protest phase of this lawsuit, declined to cooperate in the litigation. The parties kept the Court apprised, on a regular basis, of the status of attempts to secure this information, and, when it became clear the needed information was not forthcoming, kept the Court apprised of plaintiff's efforts to dispose of the merchandise by means of re-exportation.

---

[3] This, technically, was not the relief Virtus had sought. It merely sought a determination on admissibility of its goods, not a modification of the Sime Darby WRO.

On January 28, 2022, while this suit was pending, CBP replaced the WRO against Sime Darby Malaysian palm oil products with a Forced Labor Finding that such goods were likely to be made with forced labor.[4] This order authorizes CBP officials to seize and forfeit goods deemed to be in violation of the Finding.

As Virtus has advised the Court, the company's intention has been to export the goods. Actual exportation has been delayed pending physical modifications to the Penny Newman Grain Terminal. While the Court exercised jurisdiction over the res of this action – the detained palm oil products – CBP could not take action against them. Should the Court dismiss this action, plaintiff is concerned that CBP officers may seize the goods rather than allow their exportation. While plaintiff appreciates the patience and indulgence the Court has shown in this matter, plaintiff also believes that it is appropriate for the Court, in fashioning an order of dismissal, to incorporate terms which reflect the Temporary Storage Agreement into which plaintiff and CBP entered prior to the initiation of this lawsuit.

As reflected in the attached *Affirmation of Matt Swanson*, submitted herewith, Virtus is in talks with Mitsui & Co. to take back the detained PFAD, and in talks with another buyer to purchase the palm stearin, in both cases for exportation from the United States. The final step of the physical alterations to the Penny Newman Grain Terminal – installation of a pump to allow unloading of the storage tanks – is likely to be completed by mid-October. Plaintiff expects the merchandise to be exported as soon as a vessel can be contracted to take the product kept in storage tanks.

---

[4] *See Notice of Finding That Certain Palm Oil and Derivative Products Made Wholly or In Part With Palm Oil Produced by the Malaysian Company Sime Darby Plantation Berhad Its Subsidiaries, and Joint Ventures, With the Use of Convict, Forced or Indentured Labor Are Being, or Are Likely To Be Imported Into the United States in Violation of 19 U.S.C. 1307*, 87 Fed. Reg. 4635 (January 28, 2022),

## ARGUMENT

CPB regularly enters into contracts with importers and exporters, some of which require the exportation of goods.  Such contracts are subject to the usual rules of contracting, including equitable defenses. *United States v. Bolton*, 514 F. Supp. 3d 158, 168 (D.D.C 2021). Exceptions are made only when an agency is enforcing the rights of its citizens, *see Bartko v. SEC*, 845 F.3d 1217, 1227 (D.C. Cir 2017). This is not such a case.

Courts will take action to enforce, and modify as necessary, agreements to which CBP is a party. Thus, for example, in *Rakower v. Aker*, 1998 U.S. Dist. LEXIS 11800 (E.D.N.Y 1998), an individual from whom imported watches had been seized entered into a "Hold Harmless Agreement" with CBP, which required payment of a penalty and the exportation of the watches. The watches were the subject of an ownership dispute between the party to the Hold Harmless Agreement and another individual, who agreed to subject their disputes to arbitration by a Rabbinical Court. The District Court enforced and modified the Hold Harmless Agreement, to enforce the Rabbinical Court's arbitration holding.

In *Pollak Import-Export Corp. v. United States*, 14 C.I.T. 854 (1990), an importer whose wearing apparel was detained, and ultimately exported, entered into a settlement and hold harmless agreement with CBP, requiring the exportation of the goods. After the goods were exported, the importer asked this court to set aside the Hold Harmless Agreement, and refund sums paid. This court declined, holding that "the Agreement effectively disposes of all claims Pollak may have had and thus presents the Court no claims for which relief can accorded." *Id.* at 855; *see also Alde S.A. v. United States*, 28 Fed. Cl. 26 (1993)(holding that acceptance of Hold Harmless Agreement released CBP from liability for alleged damage to an aircraft when it was in Customs custody); *see*

*also Lyng Motors Inc. v. United States*, 923 F. Supp. 356 (N.D.N.Y 1996) (upholding payment of storage charges for seized property as condition of settlement of proceeding).

In like manner, it is appropriate for the Court's final judgment in this matter, even if one of dismissal, to be conditioned upon a disposition of the detained goods consistent with the terms of the Temporary Storage Agreement entered into by the parties to this action. That Agreement preserved Virtus' right to export the detained merchandise in the event that its challenge did not succeed in having the goods released for consumption. That, unfortunately for Virtus, has been the result of this action. Such an outcome expressly having been acknowledged in the Temporary Storage Agreement, Virtus is entitled to the benefit of its bargain with CBP.

Each party to the Temporary Storage Agreement received consideration for the bargain. CBP's decision to detain the goods while still on board the vessel blocked Virtus from unlading it. The company incurred several days of vessel demurrage resulting from the delayed unlading, and faced potentially disastrous fees if the vessel was unable to discharge its cargo and load the cargo for its next voyage. CBP lacked a suitable facility to store the merchandise, and the Temporary Storage Agreement saved CBP the bother and expense of locating and leasing one. The parties set the stage for an orderly resolution of the dispute regarding admissibility of the subject merchandise, with CBP allowing exportation if the goods were not admitted. There was a true meeting of the minds on all relevant points of the Agreement.

While plaintiff appreciates the Court's indulgence and patience in this matter, it submits that this Court is empowered, under Court Rule 41(a)(2), to order dismissal on conditions which recognize and enforce the provisions of the Temporary Storage Agreement.

Wherefore, plaintiff prays that the proposed Order of Dismissal, submitted herewith, be entered.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson

NEVILLE PETERSON LLP
Counsel for Plaintiff
One Exchange Plaza at 55 Broadway
New York, New York 10006
(212) 635-2730
(212) 635-0113 (Fax)

September 29, 2022